[No. 66075-6-I. Division One. March 5, 2012.]

IAN DEAN, *Appellant*, v. THE FISHING COMPANY OF ALASKA, INC., ET AL., *Respondents*.

*John W. Merriam*, for appellant.

*Megan E. Blomquist* and *Michael A. Barcott* (of *Holmes Weddle & Barcott PC*), for respondents.

¶1 Leach, A.C.J. — In this case of first impression, we must decide whether the usual summary judgment standard applies to a seaman's pretrial motion to reinstate maintenance and cure. Ian Dean appeals a trial court decision denying his pretrial motion. He contends that a more lenient standard should apply given the solicitude courts have traditionally afforded seamen seeking compensation for maritime injuries. While we are sensitive to this special solicitude, we hold the trial court correctly applied the summary judgment standard to deny Dean's motion.

¶2 Dean also claims the trial court erred by denying his motion to compel discovery asking if his former employer, the Fishing Company of Alaska (FCA), conducted surveillance of him. We do not reach this issue as the parties stipulated to a final judgment in favor of FCA. Because the trial court properly denied Dean's summary judgment motion, we affirm.

## FACTS

¶3 Dean worked aboard the FCA vessel F/T *Alaska Juris* as a fish processor in May and June 2006. According to Dean, who is six feet three inches tall, he worked 16 to 18 hours per day in a confined space with a ceiling height of six feet, requiring him to keep his neck constantly bent. Once on land, Dean sought medical treatment at the Seattle Hand Surgery Group for "numbness and tingling" in his hands and neck pain. The doctor there concluded that Dean had "possible bilateral carpal tunnel syndrome" or cervical radiculopathy. Between 2006 and 2009, Dean saw several doctors, including a hand specialist, a neurologist, and an orthopedist. Dean received carpal tunnel release surgery in

2008 and 2009. Dean was also diagnosed with myotonia congenita, a neurological condition unrelated to his time aboard the vessel. FCA initially paid maintenance and cure to compensate Dean for his medical and daily living expenses.

¶4 The record demonstrates that during the time frame at issue, Dean consistently complained of neck pain to his doctors. In May 2008, Dean's neurologist recommended physical therapy for his neck. In August 2008, Dean's orthopedist examined him and opined, "I am not certain that there are any curable recommendations for the neck. I have recommended light massage, soaks, and gentle range of motion." Dean, however, did not undergo treatment to alleviate the symptoms in his neck.

¶5 In June 2009, Dean saw Dr. Alfred Aflatooni, who diagnosed him with "cervical radiculopathy, bilateral, with weakness of the neck and arms." In Aflatooni's opinion, Dean's neck injury required "further neurological consultation[,] . . . including MRI [magnetic resonance imaging] of his cervical and thoracic region with . . . EMG [electromyography] and nerve conduction studies." In July 2009, an EMG was performed and analyzed. No treatment recommendations were made for Dean's neck at that time.

¶6 In August 2009, Dean underwent an independent medical examination by Dr. Thomas Williamson-Kirkland at FCA's request to determine whether Dean had a neck injury subject to FCA's maintenance and cure obligation. Dr. Williamson-Kirkland could find "no evidence in the medical records or my examination that any of the symptoms Mr. Dean is currently experiencing in his neck are related to his work aboard the vessel." Because his examination yielded normal results, Dr. Williamson-Kirkland had no recommendations for treatment.

¶7 In September 2009, FCA discontinued payments to Dean for maintenance and cure. It based its decision on Dr. Williamson-Kirkland's findings, the lack of evidence connecting Dean's neck symptoms to his work for FCA, and the

absence of curative treatment recommendations. Dean sued FCA in King County Superior Court, seeking compensation under the Jones Act[1] and general maritime law.

¶8 Dean moved for a pretrial reinstatement of maintenance and cure. Applying the usual CR 56 summary judgment standard, the trial court denied Dean's motion because "[p]laintiff has failed to show that no genuine issue of material fact exists as to his entitlement to maintenance and cure such that he is entitled to judgment as a matter of law."

¶9 Dean then filed a motion to compel a discovery response to the interrogatory "Has defendant or anyone acting on its behalf conducted a surveillance of the plaintiff or engaged any person or firm to conduct a surveillance of the plaintiff or his/her activities?" FCA objected, asserting that the work product doctrine protected the information from discovery. The trial court denied Dean's motion.

¶10 The parties engaged in arbitration. Following arbitration, they filed a joint motion for entry of judgment in FCA's favor, stipulating that the outcome of this appeal would determine the prevailing party. The parties also "agreed . . . that [they] will jointly request that appellate courts review the trial judge's ruling on the discoverability of surveillance films, notwithstanding the fact that trial de novo in this matter has been forgone by this stipulation." The trial court entered judgment for FCA, and Dean appeals.

## ANALYSIS

¶11 "The United States Constitution extends the judicial power of the federal courts 'to all cases of admiralty and maritime jurisdiction,' preserving the general maritime

---

[1] 46 U.S.C. § 30104.

law as a species of federal common law."[2] Congress has given federal courts exclusive jurisdiction over all admiralty or maritime cases "saving to suitors in all cases all other remedies to which they are otherwise entitled."[3] State courts therefore have jurisdiction to consider maritime actions under the "saving to suitors" clause, "provided that the state court proceeds *in personam* (here, 'at law') and not *in rem* (here 'in admiralty')."[4] Once a plaintiff elects to proceed in state court under the "saving to suitors" clause, federal substantive law and state procedural law apply.[5]

¶12 Regardless of fault, maritime common law requires a shipowner to pay a seaman a daily subsistence allowance (maintenance) and costs associated with medical treatment (cure) when the seaman becomes ill or injured in the service of a vessel.[6] A seaman must establish his or her right to maintenance and cure by a preponderance of the evidence.[7] Once proved, the entitlement to maintenance and cure continues until a seaman reaches "maximum cure," the point at which the condition becomes "fixed and stable."[8] "The employer bears the burden of proving that

---

[2] *Endicott v. Icicle Seafoods, Inc.*, 167 Wn.2d 873, 878, 224 P.3d 761 (2010) (quoting U.S. Const. art. III, § 2), *cert. denied*, 130 S. Ct. 3482 (2010).

[3] 28 U.S.C. § 1333(1).

[4] *Endicott*, 167 Wn.2d at 878-79 (citing *Madruga v. Superior Court*, 346 U.S. 556, 560-61, 74 S. Ct. 298, 98 L. Ed. 290 (1954)).

[5] *Endicott*, 167 Wn.2d at 879, 881.

[6] *Tuyen Thanh Mai v. Am. Seafoods Co.*, 160 Wn. App. 528, 538-39, 249 P.3d 1030 (2011).

[7] *Mai*, 160 Wn. App. at 538-39. The seaman must prove (1) his or her engagement as a seaman; (2) his or her illness or injury occurred, manifested, or was aggravated while in the ship's service; (3) the wages to which he or she is entitled; and (4) the expenditures for medicines, medical treatment, board, and lodging.

[8] *Miller v. Arctic Alaska Fisheries Corp.*, 133 Wn.2d 250, 268, 944 P.2d 1005 (1997).

maximum cure has occurred."[9] In *Vaughan v. Atkinson*,[10] the United States Supreme Court decreed that any ambiguities or doubts regarding payment of a seaman's entitlements must be resolved in favor of the seaman.

¶13 Here, the parties agree that the medical opinions of Dr. Aflatooni and Dr. Williamson-Kirkland create a factual dispute concerning Dean's entitlement to maintenance and cure for his neck complaints. However, Dean argues that this dispute should not preclude pretrial reinstatement of maintenance and cure because all ambiguities regarding his entitlement to maintenance and cure should be resolved in his favor. He therefore contends that the trial court erred by applying the usual summary judgment standard to resolve his motion. This involves a question of law, which we review de novo.[11]

¶14 In *Buenbrazo v. Ocean Alaska, LLC*,[12] Judge Coughenour noted that "obvious tension exists between the summary judgment standard, which requires that all doubts be resolved in favor of the non-moving party, and the canon of admiralty law, which provides that all doubts be resolved in favor of the seaman." This tension has led to inconsistencies in the way that federal courts have resolved pretrial motions for maintenance and cure.[13] To date, neither the Ninth Circuit Court of Appeals nor the United States Supreme Court has announced a standard under which courts should

---

[9] *Mai*, 160 Wn. App. at 539.

[10] 369 U.S. 527, 532, 82 S. Ct. 997, 8 L. Ed. 2d 88 (1962).

[11] *Endicott*, 167 Wn.2d at 880.

[12] No. C06-1347C, 2007 U.S. Dist. LEXIS 98731, at *8 (W.D. Wash. Feb. 28, 2007).

[13] *Buenbrazo*, 2007 U.S. Dist. LEXIS 98731, at *8-9 ("Some judges have concluded that the imposition of the summary judgment standard to a pre-trial motion seeking maintenance and cure is inappropriate. Other judges, taking their cue from the parties' motions for summary judgment, have applied the summary judgment standard without any discussion of whether its imposition is appropriate. A final approach is to apply the summary judgment standard because 'we are aware of no [other] procedure of obtaining pre-trial judgment on the merits of a claim.'" (citations omitted) (quoting *Guerra v. Arctic Storm, Inc.*, No. C04-1010L, 2004 WL 3007097, at *1, 2004 U.S. Dist. LEXIS 24388, at *2-3 (W.D. Wash. Aug. 4, 2004))).

review pretrial motions seeking maintenance and cure.[14] Therefore, we find instructive several unpublished decisions from the United States District Court for the Western District of Washington.[15]

¶15 In *Buenbrazo*, the plaintiff moved to compel maintenance and cure.[16] As here, the plaintiff there argued that his entitlement should be resolved using a more lenient standard than that used for summary judgment. The court disagreed, noting its skepticism that *Vaughan* "was designed to torpedo the well-established summary judgment procedure."[17] Further, the court stated, "Disregarding genuine issues of material facts . . . prior to trial before each party has had an opportunity to make their case places too heavy a thumb on the scale in favor of the seaman."[18] The court concluded that "in spite of the canon of admiralty law that all doubts and ambiguities should be resolved in favor of the seaman, the summary judgment standard should be applied to a pre-trial motion to compel maintenance and cure."[19] Because a genuine issue of material fact existed as to whether the plaintiff suffered injury while in the service of the vessel, the court denied the motion to compel maintenance and cure.[20]

---

[14] *Mabrey v. Wizard Fisheries, Inc.*, No. C05-1499L, 2007 WL 1556529, at *2, 2007 U.S. Dist. LEXIS 38355, at *9 (W.D. Wash. May 24, 2007).

[15] The parties also rely on unpublished district court decisions. Under Fed. R. App. P. 32.1, a party may cite unpublished district court orders that were issued on or after January 1, 2007. We do not consider decisions cited by the parties issued before that date.

[16] *Buenbrazo*, 2007 U.S. Dist. LEXIS 98731, at *1.

[17] *Buenbrazo*, 2007 U.S. Dist. LEXIS 98731, at *10.

[18] *Buenbrazo*, 2007 U.S. Dist. LEXIS 98731, at *10.

[19] *Buenbrazo*, 2007 U.S. Dist. LEXIS 98731, at *10.

[20] *Buenbrazo*, 2007 U.S. Dist. LEXIS 98731, at *14. However, citing the fact that "[a]dmiralty courts are 'flexible' in operation," the court granted the plaintiff equitable relief in the form of a temporary daily stipend. *Buenbrazo*, 2007 U.S. Dist. LEXIS 98731, at *14-15 (quoting *Putnam v. Lower*, 236 F.2d 561, 568 (9th Cir. 1956)).

¶16 Similarly, in *Mabrey v. Wizard Fisheries, Inc.*,[21] the plaintiff moved pretrial to compel the defendant to pay cure to treat carpal tunnel syndrome (CTS). Again, the parties disputed what standard the court should apply. The court concluded that the summary judgment standard should apply because (1) neither the Supreme Court nor the Ninth Circuit have provided guidance; (2) the local rules and the supplemental admiralty rules do not provide an alternative procedure; (3) the Ninth Circuit has affirmed a district court's refusal to compel maintenance and cure due to the existence of genuine issues of material fact; and (4) "whether plaintiff suffers from CTS and, if he does, whether it was caused while he was working in service of the vessel are threshold issues on which plaintiff will bear the burden of proof at trial."[22]

¶17 Dean relies on *Gouma v. Trident Seafoods, Inc.*[23] There, the federal district court refused to apply the summary judgment standard to a seaman's pretrial motion for maintenance and cure. The court recognized the holdings in *Buenbrazo* and *Mabrey* but distinguished them. The court noted that in those cases, "the purely factual question of whether the seaman had been in the service of the vessel when injured was before the court, and the fact of the unresolved 'service' question was central to the findings that a summary judgment standard was an appropriate basis on which to resolve the issue."[24] In *Gouma*, however, the parties did not dispute that the plaintiff was injured while in service of the defendants' vessel. Rather, they disputed the necessity of a medical procedure and if the

---

[21] No. C05-1499L, 2007 WL 1556529, at *1, 2007 U.S. Dist. LEXIS 38355, at *1 (W.D. Wash. May 24, 2007).

[22] *Mabrey*, 2007 WL 1556529, at *2, 2007 U.S. Dist. LEXIS 38355, at *10.

[23] No. C07-1309, 2008 WL 2020442, 2008 U.S. Dist. LEXIS 108278 (W.D. Wash. Jan. 11, 2008).

[24] *Gouma*, 2008 WL 2020442, at *2, 2008 U.S. Dist. LEXIS 108278, at *5.

plaintiff had reached maximum cure.[25] "With that understanding," the court found the plaintiff entitled to a presumptive continuance of maintenance and cure payments.[26]

¶18 The court then went on to state in dicta, "Even if a summary judgment standard of review were to be applied . . . , disputed questions of material fact . . . would simply mean that Plaintiff would be entitled to continue to receive maintenance and cure until the matter was ultimately resolved at trial."[27] Otherwise, "a vessel owner could escape maintenance and cure obligations at any time prior to trial simply by finding a physician who would pronounce the seaman at maximum medical cure."[28]

¶19 Dean contends that *Gouma* "incorporate[d] the strictures of [CR] 56 with the requirement that seamen receive the benefit of all doubts." He urges us to adopt this approach here by applying "a summary judgment standard for issues surrounding the seaman's initial entitlement . . . and then give the seaman the benefit of 'all doubts and ambiguities' when deciding whether or not maintenance should be terminated." We decline to do so. *Gouma* is persuasive authority only, and the passage Dean relies upon is dicta. Additionally, unlike *Gouma*, at issue here is Dean's initial entitlement to maintenance and cure arising from a neck injury. FCA contends that Dean's neck problems did not occur during Dean's service to the vessel. Therefore, this case presents a factual dispute more similar to that in *Buenbrazo.*

¶20 Ultimately, this case must be resolved according to state procedure. Dean elected to pursue his claim in state court and therefore under state procedural law. In a Washington state court, a seaman seeking pretrial reinstatement

---

[25] *Gouma*, 2008 WL 2020442, at *2, 2008 U.S. Dist. LEXIS 108278, at *5.

[26] *Gouma*, 2008 WL 2020442, at *2, 2008 U.S. Dist. LEXIS 108278, at *5.

[27] *Gouma*, 2008 WL 2020442, at *2, 2008 U.S. Dist. LEXIS 108278, at *5-6.

[28] *Gouma*, 2008 WL 2020442, at *2, 2008 U.S. Dist. LEXIS 108278, at *6.

of maintenance and cure has a limited number of procedural mechanisms at his disposal.[29] Here, the trial court resolved Dean's motion under the summary judgment standard, which required the court to deny his motion because a genuine issue of material fact existed regarding Dean's entitlement to maintenance and cure. On appeal, Dean has not suggested a more appropriate procedure under the civil rules, nor did he suggest an alternative procedure below. While this court is sensitive to the special solicitude traditionally paid to seamen,[30] we, like Judge Coughenour, do not think that the Supreme Court's general admonition in *Vaughan* was meant to "torpedo the well-established summary judgment procedure." This is especially so here, where this court cannot exercise the equitable powers available to federal courts sitting in admiralty.[31] Therefore, we hold that the trial court did not err by applying the summary judgment standard to Dean's motion.

¶21 Dean also assigns error to the trial court's order denying his motion to compel discovery on the existence of surveillance materials. The question whether the work product doctrine protects this information also presents an issue of first impression in Washington. However, the parties stipulated to a final judgment, making this

---

[29] In addition to moving for summary judgment under CR 56, a seaman may move for a temporary preliminary injunction under CR 65(a). *See, e.g., Collick v. Weeks Marine, Inc.*, 397 F. App'x 762, 763 (3d Cir. 2010). We note that a CR 65(a) motion would require a seaman to give security. CR 65(c). Alternatively, a seaman could move for an expedited evidentiary hearing under CR 42(b). *See, e.g., Lampson Universal Rigging, Inc. v. Wash. Pub. Power Supply Sys.*, 44 Wn. App. 237, 241-42, 721 P.2d 996 (1986) (holding that under CR 42(b), a trial court may bifurcate a case to hold a separate evidentiary hearing on an evidentiary issue when there is a disputed issue of material fact on summary judgment); *Johnson v. Marlin Drilling Co.*, 893 F.2d 77, 80 (5th Cir. 1990).

[30] *See Mai*, 160 Wn. App. at 544.

[31] *See Vaughan*, 369 U.S. at 530 ("Equity is no stranger in admiralty; admiralty courts are, indeed, authorized to grant equitable relief."); *see Key Bank of Wash. v. S. Comfort*, 106 F.3d 1441, 1444 (9th Cir. 1997) ("A district court sitting in admiralty has equitable powers to do 'substantial justice.'" (quoting *Mosher v. Tate*, 182 F.2d 475, 479 (9th Cir. 1950))).

issue moot. Because we generally do not issue advisory opinions,[32] we decline to consider this issue.

## CONCLUSION

¶22 The trial court did not err by applying the summary judgment standard to Dean's pretrial motion to reinstate maintenance and cure. We also decline to decide the discovery issue as it will have no effect on the proceedings. We affirm.

GROSSE and APPELWICK, JJ., concur.

Review granted at 175 Wn.2d 1017 (2012).

---

[32] *State ex rel. O'Connell v. Kramer*, 73 Wn.2d 85, 86-87, 436 P.2d 786 (1968).